(Super. N. Y.) 18 N. Y. Supp. 189, affirmed, Id. 779; Kerby v. Clapp, 15 App. Div. 37, 40, 44 N. Y. Supp. 116. The filing being unnecessary, it could not operate as constructive notice; and yet it is easy to see how a doubt might have been created in the minds of the jurors as to the defendant's bona fides; how this paper, with the statement of counsel when it was offered in evidence, might have suggested a design on the part of the defendant wrongfully to get possession of the plaintiff's property. We think the admission of this paper was error.

Again, the judgment roll in the action against Glickman Bros. to foreclose the mechanic's lien was offered in evidence "for the purpose of showing that the plaintiffs in this action were not made defendants in the action to foreclose the mechanic's lien under which the defendant got title to the property." We think the defendant's exception to the admission of this judgment roll as evidence raises another point of error. Obviously, the plaintiffs in this action were not proper parties defendant in that action. This is true on the plaintiffs' own theory of a conditional sale. They at best had only a contingent interest in the property, which they themselves insist formed no part of the realty. The inevitable suggestion to the jury by this evidence, and again by the remarks of counsel, was that the defendant had obtained possession of the plaintiffs' property by a high-handed proceeding, regardless of the plaintiffs' rights. We think this also was error.

It is by no means impossible that this evidence may have had some effect upon the determination of the jury. "It rests with the respondent to show that it was harmless, and could by no possibility have prejudiced the defendant." People v. Koerner, 154 N. Y. 355, 376, 48 N. E. 730, citing Greene v. White, 37 N. Y. 405, 407; Stokes v. People, 53 N. Y. 164, 13 Am. Rep. 492; People v. Greenwall, 108 N. Y. 296, 303, 15 N. E. 404, 2 Am. St. Rep. 415. The plaintiffs have not sustained this burden. The judgment should be reversed, and a new trial ordered.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.

---

(83 App. Div. 101.)

### VOGLER v. CENTRAL CROSS–TOWN R. CO.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. CARRIERS—HORSE RAILROADS — INJURIES TO PASSENGERS — SPEED — NEGLIGENCE—EVIDENCE.

 Plaintiff, a passenger on a horse car, during an altercation with the driver on the front platform fell or was thrown therefrom as the car was rounding a curve. He contended that he was thrown off by the excessive speed of the car while rounding the curve, and testified that the car was going at "full speed," and at a "terrific rate," while rounding the curve. Plaintiff's witness, who saw the accident, testified that the car was going three or four miles an hour, which was substantiated by other witnesses, and it was undisputed that the car stopped within five feet of the place where plaintiff fell. *Held*, that the evidence was insufficient to sustain a verdict for plaintiff on the ground of excessive speed.

**2. SAME—RIDING ON PLATFORM—ASSUMPTION OF RISK.**

   Where a passenger on a street railroad elects to ride on the front platform when there is room inside the car, he thereby assumes the additional risks of injury incident to such position, and defendant owes him no higher duty than to operate the car with reasonable care in the practical discharge of its duty to the public as a carrier of passengers.
   Hirschberg, J., dissenting.

Appeal from Trial Term, Nassau County.

Action by John Vogler against the Central Cross-Town Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Edward D. O'Brien, for appellant.
Rawden W. Kellogg, for respondent.

WOODWARD, J. This action was brought to recover damages alleged to have been sustained by the plaintiff in being thrown from the front platform of one of defendant's street-surface horse cars through the negligence of the latter's servant. The only material question presented upon this appeal is whether the evidence is sufficient to support the verdict upon the proposition of the defendant's negligence. It is urged by the appellant that the evidence is insufficient to establish negligence in the operation of its car, and we are of opinion that this contention is justified. The claim of the plaintiff is that he was thrown from his position on the front platform of one of defendant's cars by the reckless and rapid speed at which the car was driven upon a curve at the intersection of Fourteenth street and other ways at Union Square in the borough of Manhattan. The plaintiff testified that he had some words with the conductor in reference to a transfer to an Avenue A car, and that he made some remark to a gentleman upon the platform, which resulted in the defendant's driver taking part in the conversation and calling the plaintiff a liar. He continues:

   "Then, while the conductor had called me a liar, and we came near the curve there, and me not knowing that this car went around the curve, while he was turning around, when he turned to again he held up his hands, held them up to hurry up his horses with the reins, and the horses they swung around at a terrific gait—around the curve. That was just after he called me a liar. He jerked the horses, and said, 'Get up!' Then the car went around the curve, and I was flung out head foremost. * * * And then he hurried up his horses with the reins, and they went around like. Of course, I don't want to exaggerate, but they went around so quick, that I was flung out."

And on his cross-examination he says:

   "The car was going at full speed. It was going just at the very same rate, and faster than it did on the road, around that curve. The number of miles that car was going at the time it was going around the curve I couldn't tell you. They went just as fast as they possibly could go around that curve; as fast as they went on the straight."

This is the only evidence in the case which suggests excessive speed. It is the characterization of the plaintiff, and is decidedly

¶ 2. See Carriers, vol. 9, Cent. Dig. §§ 1101, 1376.

vague and indefinite. To say that a horse car is "going at full speed" does not convey any very definite idea. It all depends upon the speed of the particular team drawing the car. It might be three miles an hour or it might be ten. The same remarks are equally applicable to the statement that they went around "as fast as they possibly could go." The plaintiff's own witness, Policeman Madden, on cross-examination, says:

"As to the speed of the car at the time he was falling off, my knowledge of the cars going around on curves—that is, to the best of my knowledge, I don't think they go three miles an hour; that is, on this curve. I don't believe it was going over four miles an hour, if it was going that. It was, in my opinion, going slowly."

Defendant's witness, the conductor, says the car was going around the curve at the usual rate of speed, four or five miles an hour. The driver testifies that the car was not going three miles an hour. Julius Saroway, a disinterested witness, a passenger, who sat directly behind the plaintiff inside of the car, and who had his attention called to the latter by his controversy with the driver, testifies:

"I noticed some jar of the car at the time. Little bit, you know, going around. It was an ordinary jolt. There was no unusual jolt in passing around the curve across the track. I could not tell you how fast the car was going at the time. I know the car went slower there than generally it goes up the road."

On cross-examination he says:

"What made me notice that the car was going somewhat slower there than it was before was that I rode for a year in the car every morning and evening, and I know well enough it always goes slower around the curve. It went slow, I remember. I know it went slow."

It is undisputed that the car stopped within from $3\frac{1}{2}$ feet to 5 feet from the time the plaintiff fell; that the center of the horse car did not pass by the form of the plaintiff as he lay upon the street—this fact being testified by plaintiff's witness, the policeman, and by several of the defendant's witnesses. There is no suggestion that there was any sudden jerk or jolt by reason of the rapid start of the team. The whole contention of the plaintiff appears to be that the defendant was negligent in driving at a "terrific rate" or "at full speed" around a curve, while the uncontradicted evidence is that the car was stopped within a space of five feet, and no one suggests a speed of more than four or five miles an hour, which would hardly support the plaintiff's characterization of the speed.

The weight of evidence is clearly against the plaintiff's theory of the accident. There is no fact established by the evidence which would warrant the inference that the defendant was operating its car in other than the usual and customary manner, and this does not constitute neglect of any duty which the defendant owed to the plaintiff, who elected to ride upon the front platform at a time when there was plenty of room inside of the car. While it may not be said, as a matter of law, that it is contributory negligence for a person to ride upon the front platform, it can hardly be doubted that a person who does this accepts the additional risks incident to the position, and that the defendant owes him no higher duty than to operate its cars with reasonable care in the practical discharge of its duties to

the public as a carrier of passengers. Cars must be run at a reasonably fast rate of speed. They must, in practical operation, pass around curves. If this is done in the usual and ordinary manner, which the practical experience of years has demonstrated to be reasonably safe, a person who elects to stand upon the platform cannot be permitted to recover without showing that there has been a substantial deviation from this rule. The evidence in this case does not support the verdict, and the judgment should not be permitted to stand. See Bruce v. Brooklyn Heights R. R. Co., 68 App. Div. 242, 74 N. Y. Supp. 324.

The judgment and order appealed from should be reversed, and a new trial granted, upon the payment by the defendant of the costs of the trial already had within 20 days. In default of compliance with this condition the judgment and order should be affirmed, with costs.

HOOKER, J., concurs. BARTLETT and JENKS, JJ., concur in result.

HIRSCHBERG, J. I dissent. The opinion of Mr.. Justice WOODWARD clearly shows that there was a disputed question of fact. This was submitted to the jury in a charge so fair and accurate that no exception was taken, and I can see no plausible excuse for interfering with the result. The plaintiff was on the front platform because he was smoking, and because it was the place assigned by the defendant to smokers. The conductor testified as follows: "It is customary to smoke on the front platforms of these cars. That is all right, and recognized as a proper thing by the company." While the plaintiff—an apparently inoffensive man 65 years old—was standing on the front platform smoking, and wholly unaware of the existence of the curve, he was thrown off the car by the speed with which the curve was rounded. He testified to that, and even the policeman swore that he (the plaintiff) was "pitched out." As against this evidence there is really nothing but the statement of the driver that the plaintiff "went to make a step to get off the car, and he missed his foot, and fell." It is not surprising that a jury refused to accept this version of the occurrence. Even the conductor failed to corroborate it, and testified merely that, "as the car went around the curve at Fourteenth street and Union Square, he fell off." Under these circumstances I am unable to concur in the legal proposition that there can be no recovery without proof of the precise number of miles per hour the car is traveling. Any speed which will necessarily endanger the life and limb of the passenger in the place where the company has stationed him should be regarded as sufficient in law to require submission to the jury of the question of liability.